## McCrosky, et al v. Wilson, et al.

(Decided June 21, 1911.)

### Appeal from Mercer Circuit Court.

Action—Recovery of Land—In an action to recover land, heard in equity, evidence examined and held to support the finding of the chancellor.

E. H. GAITHER for appellants.

W. W. STEPHENSON and THOMAS H. HARDIN for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellants, T. S. McCrosky and Minnie McCrosky, his wife, brought this action against appellees, James C. Wilson and Addie C. Wilson, his wife. to recover a

small strip of land in Harrodsburg, Kentucky, varying in width from eight to eleven inches. The trial court rendered judgment in favor of appellees, and from that judgment this appeal is prosecuted.

In 1855 William Rothchild became the owner of a certain lot of land in Harrodsburg, on the southwest corner of Main and Water streets. At the time of his purchase there was a house on the corner, which was occupied as a store and residence. In 1865 this house was burned down, and another was built. In 1885 Rothchild sold this property to J. K. Wilson. In 1886 J. K. Wilson and wife conveyed the north side of this lot to J. P. Steele and Mary Steele, his wife, the description being as follows: "Beginning at or near a post in the fence on Main street and running north sixty feet; thence with the line of said Water street sixty feet six inches to the line of J. M. Harris, deceased; thence with said Harris' line south sixty feet; thence with line of said Wilson east to the beginning being a plot purchased by said Wilson of William Rothchild." In 1887 J.K. Wilson and wife sold the remainder of the lot to appellees, the description calling for Steele's line on the north. In 1888 J. K. Wilson brought suit against J. P. Steele and wife to collect a note of $225.00, with interest from February 24th, 1886, until paid, which note was secured by a lien on the land conveyed by Wilson and wife to Steele and wife. On the 11th day of April, 1888, J. P. Steele, who was claiming two feet of ground more than he got, compromised the matter by Steele's paying the debt and interest, and Wilson's paying the costs. This was in full settlement of all claims that either had against the other in connection with the purchase of said house and lot. This agreement was not signed by Mrs. Steele. In 1905 appellees built an extension to their porch on the northwest corner of their house. Mrs. Steele was present while this porch was being built, and made no objection. In 1908 appellants purchased from Mary Steele the lot she and her husband had purchased from Wilson, Mrs. Steele having acquired her husband's interest in the lot by will. The deed from the Steeles to appellants copied the description contained in the deed from Wilson to Steele. After appellants' purchase of the corner lot the controversy again arose as to the location of the dividing line between appellants and appellees. This controversy was finally adjusted, during the year 1909, by appellees conveying to appellants a certain strip of land on the

northwest corner of appellants' property, and appellants conveying to appellees a strip of land two feet wide off the southern side of their lot, "thus making the first parties (appellants) front on Main street fifty-eight feet, instead of sixty feet as called for in their deed." Shortly after appellants conveyed the two feet referred to, they measured their lot and found that, by beginning at the corner of the house, they had left about fifty-seven feet and one or two inches, instead of fifty-eight feet. They then brought this action to recover the strip in controversy.

It is the contention of appellants on this appeal, that the only question presented is the construction of the deed by which they conveyed the two feet of ground to appellees; and, as they intended to convey by that instrument only two feet and expressly reserved for themselves fifty-eight feet, and as appellees are in possession of about eleven inches of their ground, appellants are entitled to recover. It appears, however, that there had always been a controversy between the Wilsons and Steeles in regard to the two feet of ground. This is shown by the compromise agreement made between J. P. Steele and J. K. Wilson, on April 11th, 1888. At the time the deed in question was made, James C. Wilson's porch extended out to what is claimed was the dividing line between the two properties. He charges that the purpose of the compromise was to deed to him the ground covered by his porch and all that ground south of the division line as claimed by him, and that if the deed did not convey all this land, it was due to a mutual mistake. When we consider the circumstances under which the deed was executed, there is evidence tending to show that his contention is correct. Another standpoint from which the case may be regarded is that appellants' house is not on the line of the street, as shown by the old residences and old-established land-marks. If the distance be measured to the line of the street as fixed by these old land-marks, then appellants will have their full fifty-eight feet. Furthermore, it appears from the record that, at the time appellees bought their property, there was a post at the point now claimed by them to be the dividing line, and that the fence extended from Main street west into the yard for a short distance, and thence south for about three feet. This post was removed about ten years ago and the center line thereof marked by a line in the concrete pavement which was

subsequently built.   In the rear and on the line with the marked line in the concrete pavement there is still standing a post in the Harris line which marks the western boundary between the Wilson and Steele property.   By connecting these points, the true line is arrived at.   The beginning corner in the deed to the Steele property is not Market street, but the post in Main street.   Though the Steele deed calls for sixty feet, it is evident that J. K. Wilson never intended to convey any land south of the post from which the short fence extended.   If, then, we disregard the deed entirely, there is abundant evidence to support the finding of the chancellor as to the true location of the dividing line.   On the other hand, if we consider the deed in the light of the circumstances surrounding its execution, we conclude that it was the purpose of the grantors to convey to appellees all the land which appellants were claiming.

Judgment affirmed.